# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **MICHAEL DERRICK EDWARDS,** | CASE NO. 7:19CV00188 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| **BARRY KANODE, <u>ET</u> <u>AL</u>.,** | By: Glen E. Conrad |
| | Senior United States District Judge |
| Defendants. | |

Michael Derrick Edwards, a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials denied him due process during prison disciplinary proceedings. Presently before the court is the defendants' motion for summary judgment and Edwards' verified declaration in response thereto. After review of the record, the court concludes that the defendants' motion must be granted.

## I. Background.

Edwards is an inmate in the custody of the Virginia Department of Corrections ("VDOC"), who is currently incarcerated at Red Onion State Prison ("Red Onion"). At the time his claims in this action arose, Edwards was confined at River North Correctional Center ("River North"). On October 1, 2018, during a brick masonry class Edwards was attending, officers discovered narcotics on another inmate and in a common area of the classroom. <u>See</u> Defs.' Resp. King Aff. 2 n.2, ECF No. 52-1. They sent all the student inmates to the intake area to be strip searched and tried to determine who had dropped the narcotics in the common area.[1] Once officials had completed the searches, they sent everyone back to the vocation building for class, but they told Edwards and another inmate to wait in the hall. About an hour later, P. R. Dunning

---

[1] This summary of facts is stated in the light most favorable to Edwards, unless otherwise noted, as required in reviewing a summary judgment motion.

came up and told them he had just finished searching their cells. Dunning then asked Edwards what "all the bread in the coffee bag" was for. Edwards told Dunning that he used the bread mixed with crushed "oodle [sic] and noodles and crackers" added to it. Id. Dunning said, "Yall [sic] be doing a lot with oodle and noodles," and they "joked about it for a while" before Dunning said the inmates could leave. Id. at 1-2.

On October 2, 2018, after Edwards returned from his afternoon masonry class, Sergeant C. Jackson called Edwards to the unit manager's office and told him, "Since we couldn't catch you with any drugs you still going to get a charge for something unless you tell me who had the drugs in the class yesterday." Id. at 2. Edwards told him, "I don't know. I don't have nothing to do with that." Id. Officer R. Lowe told Edwards, "Well you are getting this charge and we [are] going to make sure you can't beat this one." Id. Lowe took a disciplinary offense report ("DOR") form and without advising Edwards of his due process rights, Lowe started marking the DOR to indicate that Edwards was refusing his right to call witnesses, obtain evidence, and so on. Other officers present pretended they did not see or hear anything. As Edwards started to walk out, Jackson said to him, "You still don't want to tell me anything?" Id.

Later that day, Edwards wrote an informal complaint about this incident, complaining that the officers' conduct was retaliatory. Lieutenant ("Lt.") Whitt answered the informal complaint on October 5, 2018, stating that when he spoke to staff, "they assured him that no threats were made, that [Edwards] wasn't in jeopardy of any type of retaliation or harassment." Id. Nevertheless, the officers pursued the DOR charging Edwards for possessing intoxicants. Edwards then filed a regular grievance, complaining that Jackson and Lowe had filed the charge to retaliate against him. B. Walls refused to log this grievance, indicating that the issue was non-grievable because it concerned a disciplinary proceeding and could be raised in a disciplinary

2

appeal. When Edwards appealed the rejection of his grievance at intake, the regional ombudsman, Robert Bivens, upheld Walls' decision.

Edwards filed an informal complaint about Walls' refusing to log his regular grievance and accused Walls of being biased and rejecting the grievance to help his friends. D. Greer responded, stating that matters related to disciplinary proceedings are non-grievable and must be handled through the disciplinary appeal process. That same day, Edwards filed a regular grievance about Greer's response. Walls refused to log it stating that "this issue did not cause you harm or personal loss" because "you have an appeal process you may utilize." Id. at 5. On appeal, Bivens upheld this intake decision.

The October 2, 2018, DOR that Lowe had marked charged Edwards under VDOC Operating Procedure ("OP") 861.1, with a 241 offense, possession of intoxicants. See MacVean Aff. Encl. A, ECF No. 41-1. The DOR description of the offense stated: "I [O]fficer Dunning with Officer Adtkins was searching cell B-128. A coffee bag of suspected alcohol was found in [O]ffender Edwards property box. Offender [E]dwards #1408577 claimed possession of the contraband. He admitted during questioning that it was indeed alcohol." MacVean Aff. Encl. B.

Officer C. MacVean conducted a hearing on this charge. Edwards explained to MacVean that "there was never any alcohol and [he] never admitted there was." Am. Compl. 6, ECF No. 12. He told MacVean that the officers had brought the DOR to retaliate against him for refusing to provide information about the drugs found during the masonry class. The copy of the DOR in the record indicates that when Lowe advised Edwards of his due process rights so he could prepare for the hearing, Edwards refused to respond. MacVean Aff. Encl. B. Edwards denied refusing to respond and told MacVean that Lowe had falsely marked the DOR that way to retaliate against Edwards for staying quiet about the drugs.

3

MacVean found Edwards guilty of possessing intoxicants, based on Dunning's report that he found alcohol in Edwards' property locker in his cell. He penalized Edwards with ten days of cell restriction. An inmate under cell restriction is confined to his cell and may only leave it for meals, one shower per day after the 9:30 p.m. count has cleared, visitation, scheduled religious services, and medical care. He also may not use the telephone and may only purchase limited types of items from the commissary. Edwards filed a disciplinary appeal, but Warden B. Kanode upheld the guilty finding.

Edwards filed his § 1983 complaint against Kanode, Jackson, Dunning, Lowe, MacVean, Greer, Whitt, Walls, and Bivens, seeking monetary damages for retaliation, due process violations, and denial of access to courts and the right to file grievances. He later filed an amended complaint, dropping his access to courts claim and raising a "claim of Miranda rights."[2] Mot. Am. 1, ECF No. 10. Liberally construed, the amended complaint raises the following contentions: (1) the defendants brought (or failed to correct) a false charge against Edwards for possession of intoxicants in retaliation for his refusal to provide information about who had dropped narcotics in the masonry class; (2) the defendants denied him due process by failing to advise him of his rights in preparing for the disciplinary hearing and by finding him guilty of the charge without evidence of intoxicants; and (3) the defendants refused him the right to file grievances about the alleged retaliation.

---

[2] Edwards refers to his "Miranda rights" claim as arising under the Fifth Amendment, which provides that "no person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Because Edwards' complaint does not concern criminal charges, the court construes his allegations as contending that the officers did not advise him of his due process rights for the disciplinary hearing, thus denying him the opportunity to request witnesses, documentary evidence, and an advisor, in violation of the Fourteenth Amendment.

4

## II. Discussion.

A. Standards of Review.

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the non-moving party must set forth specific, supported facts demonstrating that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). "When a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." Perkins v. Int'l Paper Co., 936 F.3d 196, 205 (4th Cir. 2019).[3] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

The court must view "the facts in the light most favorable to, and draw[ ] all reasonable inferences in favor of," the non-movant. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009). In addition, during summary judgment review, the court may not weigh the evidence if there are genuine issues of material fact. Anderson, 477 U.S. at 249. "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law." Id. Thus, the question the court must answer on summary judgment "is not whether a jury is sure to find a verdict for the plaintiff," but "whether a reasonable jury could rationally so find." Hoyle v. Freightliner, LLC, 650 F.3d 321, 334 (4th Cir. 2011).

---

[3] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyer." Erikson v. Pardus, 551 U.S. 89, 93 (2007). A pro se litigant's verified complaint must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

### B. Initial Matters.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The court must grant the motion for summary judgment as to Edwards' claims for damages against the defendants in their official capacities. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Mich. Dep't of State Pol., 491 U.S. 58 (1989).

The court will also grant the defendants' motion as to Edwards' claim (3), alleging that defendants Whitt, Greer, Walls, and Bivens denied him the right to pursue grievances and appeals about his retaliation claim. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017).

### C. Due Process.

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of

law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). As a convicted prisoner, Edwards does not have an inherent, constitutionally protected liberty interest in avoiding more restrictive housing classifications. Id. at 221-22. A state-created liberty interest may exist, however, if Edwards can (a) "point to a Virginia law or policy providing him with an expectation of avoiding" a particular housing classification, Prieto, 780 F.3d at 252, and (b) show that the undesirable classification "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Sandin v. Connor, 515 U.S. 472, 484 (1995), or "will inevitably affect the duration" of his confinement. Id. at 487. If the disciplinary penalty imposed on Edwards did not rise to the level of a constitutionally protected liberty interest under Sandin, then he had no federal due process right to particular procedural protections before the hearing officer imposed that penalty. Id.

The penalty imposed on Edwards for possession of intoxicants consisted of limited privileges for ten days—coming straight back to his cell after meals, showers, visits, services or medical appointments, fewer commissary purchases, and no telephone calls. Such minor and short-term restrictions on an inmate's activities simply cannot be categorized as "atypical and significant hardship" in the prison context, where a lockdown for security reasons would result in much more onerous privilege revocations for nonpunitive reasons. Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (thirty-day commissary and cell restrictions as punishment were merely changes in conditions of confinement that did not present atypical, significant deprivation under Sandin so as to create protected liberty interest); Lomax v. Shearin, No. Civ. A. DKC-09-2708, 2011 WL 1792067, at *3 (D. Md. May 9, 2011) (sixty days of cell restriction not atypical

7

hardship), aff'd, 468 F. App'x 340 (4th Cir. 2012); Pevia v. Comm'r of Corr., No. CV ELH-17-2796, 2018 WL 4052243, at *8 (D. Md. Aug. 23, 2018) (thirty days on cell restriction did not give rise to liberty interest). Because the disciplinary penalty imposed on Edwards did not trigger a constitutionally protected liberty interest, he can have no federal due process claim concerning the procedures provided or not provided to him during the proceedings in which that penalty was imposed.

Edwards' contention that he was found guilty of the charge without any evidence also fails to state a federal due process claim. First, for the reasons already discussed, Edwards had no federal right to due process regarding the challenged disciplinary charge. Even if the situation had invoked federal due process protections, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In this context, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary" body. Super. Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). In other words, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456.

It is undisputed that Dunning found the coffee bag of bread, which the officers suspected to be contraband alcohol, in Edwards' locker in his cell and Edwards admitted the bag belonged to him. Dunning's account from his personal knowledge of these events gave MacVean some evidence to support finding Edwards guilty of a 241 offense. The fact that Dunning and MacVean did not believe Edwards' claim—that he was using the bread to make pizza dough and there was no alcohol—does not erase the factual basis for MacVean's finding that Edwards had committed a disciplinary infraction. Perhaps, under OP 861.1(V)(B)(241), the officers should

have charged Edwards with a 241(b) offense—possession of paraphernalia for manufacture of intoxicants—instead of a 241(a) offense—possession of intoxicants.[4]  See MacVean Aff. Encl. A, ECF No. 41-1.  State officials' failure to apply state procedural regulations properly is not a federal due process issue, however, and thus is not actionable under § 1983.  Riccio v. Cty of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (state official's failure to abide by state law "is not a federal due process issue").  The court will grant the defendants' motion for summary judgment as to Edwards' due process claims.

D. Retaliation.

To state a claim for retaliation under Section 1983, a plaintiff must allege that (1) he engaged in a protected First Amendment activity, (2) the defendant took some action that adversely affected or chilled his exercise of his constitutional right, and (3) there was a causal relationship between his First Amendment activity and the defendant's conduct.  See Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).  "The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action."  Tobey v. Jones, 706 F.3d 379, 390 (4th Cir. 2013).

The court will assume without finding that Edwards has presented evidence meeting the first two factors of the retaliation standard.  He exercised a protected free speech right by refusing to identify the owner of the drugs in the masonry classroom or claim them himself, and thereafter, defendants performed adverse actions against him.  Dunning charged him with

---

[4] The court takes judicial notice of the fact that bread is a key ingredient for the manufacture of alcohol in prison.  See, e.g., Harrison v. S. Kernan, No. 16-CV-07103-NJV, 2017 WL 3602076, at *4 (N.D. Cal. Aug. 21, 2017) (noting that inmates cannot purchase commissary items "such as ketchup, jams, jellies, honey, syrup, fruit, juice, or dried fruit" because inmates combine "these sugar based products with bread and water to make an illegal alcoholic beverage called 'pruno'"); Goodman v. Ryan, No. CV1601513PHXNVWBSB, 2018 WL 10195811, at *6 (D. Ariz. Jan. 10, 2018) (noting that "'pruno,' also known as 'prison wine' or 'hooch,' . . . is a fermented alcoholic beverage that inmates make from fruit, sugar, bread, potatoes, and other ingredients").

possessing intoxicants and, according to Edwards, Lowe purposely denied him the state-required due process rights listed on the DOR.

Edwards also argues that his evidence proves a retaliatory motive caused the adverse action. According to his verified complaint and declarations, the officers admitted that they wrote the charge and denied him due process because of his refusal to cooperate in the drug investigation. What Edwards fails to show is that his admitted possession of a coffee bag of bread was <u>permitted</u> under VDOC operating procedures and but for the officers' retaliatory motive, could not have subjected him to a disciplinary infraction. In fact, possession of intoxicants <u>and</u> possession of paraphernalia for making intoxicants are both listed infractions for which the officers could rightfully have charged Edwards. "While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." <u>Orebaugh v. Caspari</u>, 910 F.2d 526, 528 (8th Cir. 1990); <u>Richardson v. Ray</u>, 492 F. App'x 395, 396 (4th Cir. 2012) (rejecting claim that disciplinary charge for covering cell door window was retaliatory, where plaintiff admitted covering window "to take a 'bird bath'" and "presented no support for his claim that he was permitted to cover his window in such a situation"); <u>Latson v. Clarke</u>, 346 F. Supp. 3d 831, 872 (W.D. Va. 2018), <u>aff'd</u>, No. 18-2457, 2019 WL 6896702 (4th Cir. Dec. 18, 2019) (finding no causation to support plaintiff's claim of retaliatory segregation because he was pardoned, where other pardoned inmates were also placed in protective segregation until their release). Because Edwards has not shown that he was permitted to possess the bag of bread that he admitted possessing, his evidence does not survive

10

the defendants' motion for summary judgment on his retaliation claim. The court will grant their motion.[5]

### III. Conclusion.

In conclusion, for the reasons stated, the court will grant the motion for summary judgment. An appropriate order will enter herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 5th day of March, 2020.

                                                  /s/ Ju Conrad
                                           Senior United States District Judge

---

[5] Edwards has moved for reconsideration of the magistrate judge's denial of spoliation sanctions, based on prison officials' failure to preserve surveillance camera footage from October 1 and 2, 2018, relevant to his claims. The magistrate judge denied the motion for sanctions "based on the court's finding that plaintiff has not met his burden under Federal Rules of Civil Procedure 37(e)(1) to show that he has been prejudiced by the loss of video recording requested." Ord. 1, ECF NO. 53. Edwards asserts that this missing footage would corroborate his allegations about what happened during the search of his cell on October 1, 2018, and in the unit manager's office the next day. The defendants provide evidence, however, that surveillance cameras do not film events inside inmates' cells. Moreover, the court has herein taken Edwards' allegations as true and, nevertheless, concludes that they do not support any constitutional claim actionable under § 1983. Accordingly, he cannot show the required prejudice to support sanctions for the loss of the requested video recordings, and the court will deny his motion for reconsideration and affirm the magistrate judge's denial of such sanctions.